### 9339.  STALLINGS v. DeBARDELEBEN COAL COMPANY.

Under the particular facts of this case the court did not err. in granting a nonsuit or in refusing to reinstate the case.

    DECIDED JULY 30, 1918.  REHEARING DENIED SEPTEMBER 17, 1918.

Action for breach of contract; from Colquitt superior court— Judge Thomas.  October 30, 1917.

L. V. Stallings brought suit by attachment against the DeBardeleben Coal Company.  The suit was for damages for failure of

the defendant to ship 500 tons of Sipsey coal to the plaintiff according to the terms of a contract between them, dated April 12, 1916. The plaintiff, by amendment, alleged that he ordered 50 tons of coal on October 13, 1916, and 50 tons on October 18, 1916, and that on December 27, 1916, he ordered 200 tons to be shipped in January, 1917, and 200 tons to be shipped in February, 1917; all of which orders the defendant failed and refused to fill, stating to him that it refused to ship any coal at all to him, and renounced and repudiated the contract. The defendant answered, admitting the contract as alleged, and pleaded certain provisions of the contract; which, so far as material, are stated in the following opinion. It pleaded the failure of the plaintiff to place any orders for coal with the defendant until October 15, and that it then received orders from its contract customers for all of the Sipsey coal that could be mined and marketed prior to December 15. Further, that floods curtailed the output of the mines and that the shortage of cars prevented shipments from being made. Further, that it never declined or refused to ship to the plaintiff coal in conformity with the terms of the contract, but, on the contrary, that it agreed repeatedly to comply with the contract and to furnish to the plaintiff coal in such amounts as it was able to supply under a pro-rata division of available supply with other obligations, etc. After introduction of evidence by the plaintiff the court, on motion of the defendant, granted a nonsuit. The plaintiff made a motion to vacate the judgment of nonsuit and to reinstate the case. The judge overruled the motion, and the plaintiff excepted.

*Parker & Gibson*, for plaintiff.

*Branch & Snow, Shipp & Kline*, for defendant.

HARWELL, J. (After stating the foregoing facts.) Was there a breach of the contract by the defendant by its failure to ship coal as ordered by the plaintiff? The contract is admitted by the defendant. It is further admitted by the defendant that it shipped no coal to the plaintiff under this contract. It also appeared from the correspondence that two cars of coal of 50 tons each were ordered by the plaintiff to be shipped under this contract, one on October 13th, 1916, to be shipped at once, and one on October 18, 1916, to be shipped November 15, 1916. The defendant, however, relies on the following clauses of the contract to relieve it

from any breach for failure to ship the coal as ordered by the plaintiff: "This contract is one of a number of contracts made by the seller and is made subject to strikes, accidents, car supply, or other causes beyond their control. The buyer and seller, in entering into this contract, realize the uncertainty of absolute deliveries growing out of strikes, casualties, or other causes beyond the control of either party; and it is hereby mutually acknowledged that the intent of this agreement is not to bind either party as to the failure to perform or modify performance by reason of the matters beyond the control of the party in default, but that the material shall be shipped by the seller and accepted by the buyer as per delivery specified, so far as labor, the physical condition of the respective plants, and the ability of carriers will permit. It is mutually understood and agreed, however, that in the event of only partial fulfillment of this contract through restriction of output from causes beyond the control of the seller, then the buyer shall accept without recourse such amount of Sipsey coal as seller may be able to supply under a pro-rata division of available supply with other obligations."

It is necessary to determine the proper construction to be put upon this contract. The contract is one of a number of contracts for the delivery of coal made by the seller. Of this the buyer was put on notice by the contract and he accepted it with this understanding. In the event of any partial fulfillment of the contract "though restriction of output from causes beyond the control of seller, then the buyer shall accept without recourse such amount of Sipsey coal as the seller may be able to supply under a pro-rata division of available supply with other obligations." The defendant was obligated to its customers to ship "as ordered." It must await orders from the buyer, and if no orders came it could not ship. After receiving and accepting orders from customers, if the available supply of coal was exhausted by reason of floods, or if the coal company was unable to supply the coal as ordered, or upon the date ordered by the buyer, by reason of its inability to ship on account of the shortage of cars or other conditions provided for by the contract, it could not be held liable for a breach thereof. It is true that such a contract is favorable to the coal company. The plaintiff must accept without recourse what the coal company is able to supply under a pro-rata division of the

available supply with other obligations. The buyer cannot, under such a condition, be certain that he will get the coal which he purchases. Courts, however, must enforce contracts as they find them.

The plaintiff introduced the entire correspondence between the parties. This includes the letters from the defendant. The defendant insists that if it be true that a prima facie case of breach was made out by the failure to ship as ordered by the plaintiff, it was completely rebutted by the evidence introduced by the plaintiff, to wit, the letters from the defendant, and that, having introduced this evidence, the plaintiff is bound by it, and that this evidence completely relieves the defendant from any breach of the contract. We do not think the plaintiff is conclusively bound by the declarations of the defendant in these letters. In *Christian v. Macon &c. Ry. Co.*, 120 *Ga.* 314 (47 S. E. 923), it was said: "Where a party introduces statements of his adversary which are partly in his favor and partly against him he is not concluded by the self-serving portions of said statements, nor estopped to contradict them. . . These cases show that a party who introduces a witness is not absolutely bound by his testimony, but may contradict him and show the real facts of the case. Nor are the jury bound to believe that part of the declaration which is in favor of the party making them. They may believe or reject the whole, or for sufficient reasons they may believe part and reject the remainder." Mr. Chief Justice Simmons quoted from the case of Bearss *v.* Copley, 10 N. Y. 93, as follows: "The referee was also right in denying the motion for a nonsuit. Plaintiff had given evidence tending to establish his employment and the length of time he had labored for the defendant. He then showed by the declarations of the defendant his dismissal and the amount of his salary. In the course of the same conversation defendant said that the plaintiff got drunk, was absent and neglected his duties. Defendant insists that the admission must be taken together, and in this he is correct; but as there was other evidence the referee was not obliged to give equal credit to every part of the transaction."

While the plaintiff was not bound conclusively by this evidence, it is nevertheless evidence which must be considered, the plaintiff having introduced it; and unless there is some evidence which would authorize the jury to reject the declarations of the defend-

ant, and to find that no such conditions existed as insisted on by the defendant in this correspondence, the court was right in holding that no breach was shown. Compare *Johnson* v. *Sun Fire Ins. Co.,* 3 *Ga. App.* 430 (60 S. E. 118); *Donaldson* v. *Marsh Cypress Co.,* 9 *Ga. App.* 267 (2) (70 S. E. 1121).

The declarations of the defendant as contained in its letters introduced by the plaintiff show such a curtailment of output on account of conditions provided for in its contract and the shortage of cars as made it impossible for the coal company to deliver the coal to the plaintiff except upon delayed shipments. The coal company offered to make delayed shipments, but the plaintiff refused to accept these offers of delayed shipments, and insisted upon delivery as requested in his orders. These declarations of the defendant as contained in its letters relieve the defendant of any breach.

On October 2 the plaintiff received a letter from the defendant, apprising him of the curtailment of the output of the mines on account of July floods and the shortage of railroad cars, and that the coal company had not completed all of its August orders, and would have to carry its September business to October, and that it could not accept orders for Sipsey lump coal for shipment sooner than November. Notwithstanding this notice, the plaintiff sent no order until October 13. The correspondence further shows that before any orders were received from the plaintiff, the defendant had received and accepted orders from contract customers for all Sipsey lump coal that could be shipped prior to December. The correspondence further shows an offer of the defendant to make delayed shipments of coal to the plaintiff in December, and that the plaintiff rejected this offer.

The correspondence, considered in connection with the contract, we think makes out a complete defense for the coal company and negatives any breach of the contract. It is true that this comes from letters of the defendant, but it is evidence, nevertheless, introduced by the plaintiff. The plaintiff attempted to rebut this evidence by offering evidence of shipments of coal made by the defendant to other parties. But this evidence, without attempting to discuss it, is not, in our opinion, sufficient to show any breach of the contract by the defendant.

The burden was on the plaintiff to show that he was damaged.

It was incumbent on the plaintiff to submit evidence showing the market price of Sipsey coal of the special grade ordered at the time of the alleged breach, f. o. b. the mines, or to furnish data from which the jury could arrive at this market price. It may here be noted that the orders sent on October 13 and October 18 did not specify the grade of Sipsey coal to be delivered, and there were three grades with varying prices named in the contract. Moreover, upon a careful examination of the evidence, we hardly think there is evidence sufficient to show the market price, or data by which the market price at the mines could be determined. The court did not err, therefore, in granting the nonsuit or in refusing to reinstate the case, and the judgment is

*Affirmed. Broyles, P. J., and Bloodworth, J., concur.*